# IN THE COURT OF APPEALS OF IOWA

No. 15-0078
Filed April 6, 2016

**WYATT CHANDLER JOHNSON,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Black Hawk County, George L. Stigler, Judge.

Wyatt Johnson appeals the district court's denial of his application for postconviction relief, alleging ineffective assistance of counsel concerning application of the felony-murder rule. **AFFIRMED.**

John J. Bishop, Cedar Rapids, for appellant.

Thomas J. Miller, Attorney General, and Kevin Cmelik and Martha E. Trout, Assistant Attorneys General, for appellee.

Considered by Danilson, C.J., and Mullins and McDonald, JJ.

**MULLINS, Judge.**

Wyatt Johnson appeals the district court's denial of his application for postconviction relief. Johnson contends his trial counsel improperly advised him the felony-murder rule could be applied in his case and this incorrect advice induced him to plead guilty to second-degree murder, two counts of attempted murder, and two counts of willful injury.

**I.      Background Facts and Proceedings**

On April 28, 2009, two groups of young men—affiliated with two separate gangs—met at a park in Waterloo to fight out their differences. Johnson was not a member of either gang but went to the park to watch the fight. Ultimately, Johnson, who was armed with a knife, became involved in the altercation. Two individuals, Steven Perry and Bryce Smith, were stabbed during the course of the fight. A third individual, Kevin Garcia, was stabbed in the chest and died.

Johnson was charged with attempted murder for the stabbings of Perry and Smith, willful injury causing serious injury for the stabbing of Perry, and willful injury causing bodily injury for the stabbing of Smith. Johnson was also charged with first-degree murder for the death of Garcia, under the alternative theories of felony murder and murder by premeditation.

A jury trial commenced in August 2011, but ended in a mistrial. A second jury trial began in January 2012. Before the trial concluded, Johnson pled guilty to murder in the second degree for the death of Garcia and pled guilty to all charges arising from the stabbings of Perry and Smith. Johnson filed an application for postconviction relief, which the district court denied by order dated December 12, 2014. Johnson timely appealed.

## II.  Scope and Standard of Review

In order to prove an ineffective-assistance-of-counsel claim, an appellant must show by a preponderance of the evidence that counsel (1) failed to perform an essential duty and (2) prejudice resulted.  *Ennenga v. State*, 812 N.W.2d 696, 701 (Iowa 2012).  We can resolve ineffective-assistance claims under either prong.  *State v. Ambrose*, 861 N.W.2d 550, 556 (Iowa 2015).  We review ineffective-assistance claims de novo.  *State v. Finney*, 834 N.W.2d 46, 49 (Iowa 2013).

## III.  Ineffective Assistance of Counsel

Under the first prong—whether the trial counsel failed to perform an essential duty—"we measure counsel's performance against the standard of a reasonably competent practitioner."  *Dempsey v. State*, 860 N.W.2d 860, 868 (Iowa 2015) (citation omitted).  Counsel is entitled to a presumption that the duties were competently performed, and Johnson bears the burden to rebut this presumption by a preponderance of the evidence.  *See id.*  "[W]e avoid second-guessing and hindsight" and "scrutinize each claim in light of the totality of the circumstances."  *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001).

Johnson's ineffective-assistance-of-counsel claim rests upon his belief his trial counsel failed to perform an essential duty by improperly instructing him the felony-murder rule could apply to his case, thereby inducing him to plead guilty.  Johnson contends—based on his counsel's incorrect advice—he did not make a knowledgeable and intelligent waiver of his constitutional right to a trial by jury.  *See Rhoades v. State*, 848 N.W.2d 22, 28 (Iowa 2014) (noting to challenge a guilty plea a defendant must show either (1) there was no factual basis to support

the guilty plea or (2) he did not make a knowing and intelligent waiver of a constitutional right when pleading).

"[A] person commits murder in the first degree under the felony-murder rule in Iowa when the person kills another person (with express or implied malice aforethought) while participating in a nonexempt forcible felony." *State v. Tribble*, 790 N.W.2d 121, 125 (Iowa 2010) (citing Iowa Code § 707.2(2) (2005));[1] *see also* Iowa Code § 707.1 (2009) (defining "murder" as the killing of "another person with malice aforethought either express or implied"). "[P]articipating in a forcible felony" is defined by section 702.13 as follows:

> [C]ommencing with the first act done directly toward the commission of the offense and for the purpose of committing that offense, and terminating when the person has been arrested or has withdrawn from the scene of the intended crime and has eluded pursuers, if any there be.

Iowa Code § 702.13 (defining "participating in a public offense"); *see also Tribble*, 790 N.W.2d at 125 (applying the definition in section 702.13 to the phrase "participating in a forcible felony" in section 707.2(2)).

"A 'forcible felony' is any felonious child endangerment, assault, murder, sexual abuse, kidnapping, robbery, arson in the first degree, or burglary in the first degree." Iowa Code § 702.11(1). Additionally, "willful injury that causes serious injury can serve as a predicate felony under Iowa's felony-murder statute." *Tribble*, 790 N.W.2d at 125; *see also* Iowa Code §§ 702.11(2)(a),

---

[1] In *Tribble*, the Iowa Supreme Court analyzed the Iowa Code as published in 2005. 790 N.W.2d at 125. Its analysis is equally applicable here where the 2009 Iowa Code governs.

708.4(1). Under the State's theory, the stabbings of Perry and Smith serve as predicate felonies for the felony-murder rule.[2]

Johnson argues the felony-murder rule requires the non-lethal stabbings of Perry and Smith—the predicate felonies—occur *before* the lethal stabbing of Garcia. He then concludes the felony-murder rule could not apply to his case because the facts establish either he stabbed Garcia before stabbing Perry and Smith—and therefore the subsequent stabbings could not serve as predicate felonies for the felony-murder rule—or he could not have stabbed Garcia at all. The State does not dispute Johnson's temporal argument. Instead, the State contends (1) Johnson commenced the predicate felonies by arriving at the park with a knife, and thus the specific timing of the stabbings is irrelevant, and (2) regardless, the evidence supports Perry and Smith were stabbed before Garcia. We need address Johnson's temporal argument only if the evidence fails to support the State's theory that the predicate felonies occurred prior to the act resulting in Garcia's death.

The record reflects, and it is undisputed by the parties, that the fight started when Garcia was hit by a member of the opposing gang. Shortly thereafter, the confrontation between the two gangs devolved into a disorganized brawl. Perry testified at trial that he heard Smith shout he had been hit. Perry further testified he saw Johnson in front of Smith, that he approached and swung at Johnson, but in the process Johnson stabbed him. This testimony was

---

[2] In its brief, the State argues that both the attempted-murder charges and the willful-injury charges support application of the felony-murder rule. However, Iowa law explicitly excludes willful injury causing bodily injury as a forcible felony, *see* Iowa Code §§ 702.11(2)(a), 708.4(2), and thus the charge of willful injury of Smith could not serve as the predicate felony.

corroborated by Smith, who identified Johnson as the individual who stabbed him and subsequently stabbed Perry. In addition, the police recovered Johnson's knife after the altercation. A criminalist testified at trial that Johnson's knife was tested and the DNA of Perry and Smith was found on the knife. Perry testified that after he and Smith were stabbed, they left the fight. Perry stated he then returned to the fight and, in so doing, saw Garcia moving toward a shelter in the park. Perry indicated the fight was dispersing and he went to Garcia, now on the ground in the shelter. Joshua Ingham, a friend of Garcia's, testified he saw Johnson pull a knife out of Garcia's chest and that Garcia immediately fell to the cement floor.

While not disputing these facts were presented at trial, Johnson relies on other evidence and argues the felony-murder rule could not possibly have applied. Johnson's brief is essentially a well-fashioned argument that evaluates the strength of the evidence and the State's theories, argues the greater weight of the evidence supports a conclusion that Johnson did not stab Garcia, but if he did, the stabbing occurred before the other stabbings, and thus he concludes the evidence cannot support application of the felony-murder rule.

We focus on this correct recitation of facts from Johnson's final brief:

> Kevin Garcia died at the scene of the fight as a result of a puncture wound to the center of his chest. Of the multitude of persons at the fight, both participants and nonparticipants, only one person claimed to have seen [Johnson] involved in the stabbing of Mr. Garcia - Joshua Ingham. Mr. Garcia was Mr. Ingham's "best friend" since fifth grade. Mr. Ingham participated in the fight on the [same side as Garcia]. Mr. Ingham specifically claimed that he saw [Johnson] pull a knife from Mr. Garcia's chest and that when [Johnson] did so, Mr. Garcia fell immediately to the cement and [Johnson] took off running.

Johnson would have us evaluate the truthfulness or accuracy of Ingham's testimony and agree with his argument that the other evidence weighs against Ingham's version of the facts. Our duty, however, is not to determine whether a jury would have or should have believed Ingham. Our duty is to determine whether Johnson's attorneys competently advised him of the risk the evidence was sufficient for the court to instruct the jury on the felony-murder rule and the risk of an adverse verdict on the issue. There is considerable evidence to support a conclusion that Johnson stabbed Perry and Smith. The fighting issues in Johnson's brief are that Johnson had nothing to do with the stabbing of Garcia, or alternatively, if he did stab Garcia, it was before he stabbed Perry and Smith, and that under either of his theories the timing sequence necessary for the felony-murder rule cannot be satisfied.

Ingham's testimony, if believed by a jury, would establish Johnson stabbed Garcia and left the scene and Garcia subsequently died as a result of the stabbing. With evidence clearly showing Johnson stabbed Perry and Smith, if the jury believed Ingham, those stabbings had to have occurred before Johnson stabbed Garcia and left the scene. That sequence of events would, if believed by a jury, support a felony-murder-rule conviction. Johnson's arguments to the contrary go to the weight of the evidence, not the sufficiency of the evidence to support the State's felony-murder-rule theory.

Given this conclusion, we need not decide whether some other sequence of events, if believed by the jury, would have been sufficient to support a felony-murder theory or conviction.

The ultimate issue before us is whether Johnson's trial counsel failed in an essential duty by cautioning Johnson that the felony-murder rule might apply.

> [C]riminal cases in general, and guilty pleas in particular, are characterized by considerable uncertainty:
>> "[T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court. If proved, would those facts convince a judge or jury of the defendant's guilt? . . . Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts."

*State v. Carroll*, 767 N.W.2d 638, 642 (Iowa 2009) (second alteration in original) (quoting *McMann v. Richardson*, 397 U.S. 759, 769-70 (1970)). In the instant case, Johnson had been charged with first-degree murder under the felony-murder rule. At the time Johnson was considering the plea offered by the State, his counsel reasonably believed the State would continue to prosecute that theory of the case. The State had presented evidence consistent with and supporting its felony-murder-rule theory. That other evidence presented may have conflicted with the State's theory does not render trial counsel's advice ineffective assistance of counsel. Johnson simply has not proven the advice he received was outside the range of competence required of his trial counsel. *See id.* (noting a defendant must prove "the advice he received from counsel in connection with the plea was not within the range of competence demanded of attorneys in criminal cases").

It is not the role of this court to weigh the evidence and predict the outcome the jury might have reached. By pleading guilty, Johnson surrendered his opportunity to argue his view of the facts before a jury in favor of the certainty of a lesser charge. There is sufficient evidence in the record to support the State's theory that the predicate felonies occurred prior to the stabbing of Garcia; thus, counsel did not fail in an essential duty by instructing Johnson that the felony-murder rule could apply to his case.

**AFFIRMED.**